UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK                    Chapter 7
------------------------------------------------------------------x    Case No. 807-71796-reg
In the Matter of INFLIGHT NEWSPAPERS, INC.

                              Debtor.
------------------------------------------------------------------x
R. KENNETH BARNARD, ESQ., TRUSTEE OF
INFLIGHT NEWSPAPERS, INC.


                    Plaintiff,                    Adv. Proc. No. 8-08-08166-reg


        -against-


JOSH JOFFE a/k/a JOSHUA E. JOFFE, a/k/a JOSHUA
JOFFE AND DEBORAH JOFFE a/k/a DEBBIE J. JOFFE


                    Defendants.
------------------------------------------------------------------x

## MEMORANDUM DECISION


        This matter is before the Court pursuant to cross-motions for summary judgment filed by

the plaintiff and one of the defendants in adversary proceeding no. 08-08166 pending in the

bankruptcy case of Inflight Newspapers, Inc. (the "Debtor").  The plaintiff is R. Kenneth

Barnard, Esq. (the "Trustee" or "Plaintiff"), the Chapter 7 trustee for the Debtor's estate.  The

defendants are Josh Joffe a/k/a Joshua E. Joffe, a/k/a Joshua Joffe (the "Defendant"), an alleged

officer and Vice-President of the Debtor and his wife, Deborah Joffe a/k/a Debbie J. Joffe (the

"Co-Defendant")(together, the "Defendants").  The complaint in this adversary proceeding

alleges that the Defendants diverted funds belonging to the Debtor in violation of the

Defendant's fiduciary duties.  In the motions before the Court, each party seeks summary

judgment on the first, second, fourth, fifth, sixth, ninth, tenth, eleventh, twelfth, thirteenth, twenty-first and twenty-second claims for relief by the Trustee.

In addition, the Trustee asks the Court to strike and not consider the affidavit in opposition filed by the Defendant (the "Affidavit"), in light of the fact that the Defendant previously asserted his Fifth Amendment privilege during discovery proceedings.  The Court finds, for the reasons stated below, that the Affidavit should not be considered.

As a rule of law, the Court is free to draw an adverse inference against the Defendant because the Defendant asserted his Fifth Amendment privilege.  However, this adverse inference is in tension with the inference the Court must draw, as a matter of law, in favor of the nonmoving party in a summary judgment motion; in this case, the Defendant.  Notwithstanding the potential for the adverse inference that may be drawn against the Defendant to counter the inference that must be drawn in favor of the Defendant as the nonmoving party, the moving party must still present independent evidence to meet his burden on summary judgment.  Thus, the burden on the Trustee to show that there is no genuine issue of material fact remains unaltered by the drawing of the adverse inference.

With respect to the motions before the Court, the Defendant argues that any funds that may have been diverted were not in fact diverted from the Debtor, but rather from another non-debtor entity.  For the reasons set forth below the Court finds there is a genuine issue of material fact regarding whether the diverted funds were property of the Debtor's estate.  Because resolution of this issue is central to the Trustee's motion for partial summary judgment, the Court denies the motion.  Finally, Defendant argues in his cross-motion for partial summary judgment that the statutes of limitations have expired on nearly all of the Trustee's claims.  For the reasons set forth below, the Court denies the Defendant's motion.

*Procedural History and Facts*

On May 21, 2007, an involuntary bankruptcy petition was filed against the Debtor by the petitioning creditors, Road Carriers Local 707 Pension Fund, Road Carriers Local 707 Welfare Fund, Lois Dua and Lorraine Lehner, seeking relief pursuant to Chapter 7 of the Bankruptcy Code. An order for relief was entered on August 10, 2007 and R. Kenneth Barnard, Esq. was appointed and duly qualified as Chapter 7 Trustee of the Debtor's estate.

On December 19, 2007, pursuant to an order of the Court, the Trustee, through his counsel, conducted a Rule 2004 examination of the Defendant regarding the financial affairs of the Debtor during the time period when the Defendant was allegedly employed by the Debtor. During the examination the Defendant did not answer the Trustee's questions because he asserted his Fifth Amendment privilege against self-incrimination.

On July 31, 2008, the Plaintiff commenced the instant adversary proceeding against Defendants (the "Complaint"). In the Complaint, the Plaintiff seeks to recover six million dollars that the Defendant allegedly transferred from the Debtor to himself for his personal use, which transfers allegedly occurred between 1999 and 2004 (the "Transfers"). The Trustee is seeking to recover the Transfers under the following theories: conversion on the first claim for relief; money had and received on the second claim for relief; property of the estate on the third claim for relief; breach of fiduciary duty under New York law on the fourth, fifth and sixth claims for relief; accounting on the seventh claim for relief; declaratory judgment on the eighth claim for relief; fraudulent conveyance avoiding transfers on the ninth, tenth, eleventh, twelfth, and thirteenth claim for relief; injunctive relief on the fourteenth claim for relief; aiding and abetting a conspiracy to commit fraudulent conveyance on the fifteenth claim for relief; constructive trust against property on the sixteenth claim for relief; equitable lien against

property on the seventeenth claim for relief; fraudulent concealment of property on the eighteenth claim for relief; accounting regarding property on the nineteenth claim for relief; declaratory judgment determining the nature, extent and value of property on the twentieth claim for relief; unjust enrichment on the twenty-first claim for relief; and self-dealing on the twenty-second claim for relief.

On November 17, 2008 the Defendant filed an answer denying all allegations and asserting the following affirmative defenses: failure to state a claim, failure to plead with particularity, money and property received is not property of the estate, claims are barred by the applicable statute of limitations, and claims are barred by the doctrine of laches, waiver and/or estoppel.

On December 4, 2008, the Plaintiff served a request for the production of documents on the Defendant. In response to the request, the Defendant asserted his Fifth Amendment privilege against the production of self-incriminating documents and failed to produce any of the requested documents.

On December 16, 2008, Plaintiff's counsel examined Defendant, who responded to each of the Trustee's questions by asserting his Fifth Amendment privilege.

On May 26, 2009 the Trustee filed a motion seeking partial summary judgment against the Defendant. In the motion for partial summary judgment, the Trustee alleges that he is entitled to judgment as a matter of law as to the first, second, fourth, fifth, sixth, ninth, tenth, eleventh, twelfth, thirteenth, twenty-first and twenty-second claims for relief asserted in the Complaint.

In support of the Trustee's motion, Trustee's counsel relies on filings in a criminal action commenced against the Defendant in the United States District Court for the Eastern District of

4

New York bearing Index number 08-CR-206 (the "Criminal Action").  The Plaintiff cites to an

Information[1] (the "Information") filed against the Defendant by the Office of the U.S. Attorney

charging the Defendant with conspiring to defraud the United States.  According to the

Information, between 1999 and 2004 the Defendant and others "knowingly and intentionally

conspire[d] to defraud the United States by impeding, impairing, obstructing and defeating the

lawful functions of the Internal Revenue Service of the United States Department of the Treasury

in the ascertainment, computation and collection of . . . income taxes."  The Information contains

allegations that the Defendant did not report as income on his federal income tax returns the

proceeds of checks that he kept for his personal use and, further, that he and others committed at

least one overt act in furtherance of that conspiracy.

The Trustee alleges that Defendant was an officer and Vice-President of the Debtor

during the time period that the Transfers occurred, which is supported by the allegations set forth

in the Information.  The Defendant does not dispute that the Information contains allegations

with respect to the Defendant acting as a Vice President of Inflight Newspapers and Magazines,

Inc. ("INM").  However, the Debtor is not specifically named as the entity from which the

Defendant received the unreported income.  In the record of the Defendant's plea hearing before

the Honorable Roanne L. Mann, the Defendant testified,

> [F]rom about 1999 to 2004 I along with others [inaudible] magazines in Valley Stream,
> New York agreed to withdraw money from the company for the personal use of the
> owner of the company and myself.  We did this with the understanding that the owner of
> the company and I would not report this money as income on our federal income returns.
> In furtherance of this agreement in 2003, I filed a federal income tax return for 2002
> which did not report as income a certain amount that I received from the company for my
> personal use.  I knew that my actions were wrong.

---

[1] According to Black's Law Dictionary, an information is "[a] formal criminal charge made by a prosecutor without
a grand-jury indictment."  Black's Law Dictionary 795 (8th ed. 2004)(*citing* Fed. R. Crim. P. 7).  "The information
is used to prosecute misdemeanors in most states, and about half the states allow its use in felony prosecutions as
well." *Id.*

The Plaintiff also relies on non-party witness testimony consisting of depositions from Thomas C. Bracken, Barry Alper, and Barry Saines; and the Plaintiff has introduced transcripts from these depositions in support of his motion for partial summary judgment. Notwithstanding that the Trustee and the Defendant disagree as to whether the use of "Inflight" and "Inflight Newspapers" in the depositions refers to the debtor or another entity, the following depositions are submitted in support of the Trustee's motion.[2]

On January 13, 2009 Plaintiff's counsel examined Mr. Thomas C. Bracken, who testified that he was employed as the comptroller of Inflight from September 1990 through March 2004 and as an accounting clerk from March 2004 through March 2005. Mr. Bracken testified that in 1998 the Defendant was hired as a consultant by Inflight, and was later given the title of Vice President of strategic planning. Mr. Bracken further testified that the Defendant, wanting to remove money from Inflight, approached Mr. Bracken with the idea of creating falsified invoices for a company known as J&R, a vendor of Inflight. This scheme was known as the "J&R scenario." Mr. Bracken testified that the falsified J&R invoices were submitted to the accounts payable[3] employee, who would generate checks and once the checks were issued and signed, Mr. Bracken would give the checks to the Defendant. Mr. Bracken also testified about the "swap scenario," a process whereby checks from Inflight were written to magazine companies as part of a voided swap check scheme and these checks were then given to the Defendant to be cashed. Mr. Bracken testified that the swap scenario began in 2000 and continued through 2004, resulting in withdrawals from Inflight in the aggregate amount of about $750,000 per year.

---

[2] Because the parties disagree as to whether the entity referenced in the depositions was the Debtor or another entity, the Court uses "Inflight" to describe the company, rather than "Debtor" or INM.
[3] Although Plaintiff's brief reads "accounts receivable," a closer look at the deposition testimony revealed that question and answer between Trustee's counsel and Mr. Bracken referred to the accounts payables employee.

On or about January 20, 2009, Plaintiff's counsel examined Mr. Barry Alper on behalf of City Services, Inc., a commercial check cashing company. Mr. Alper testified that in early 2000, City Services first cashed a check for Inflight. Mr. Alper also testified that Barry Saines, who was not an employee of City Services, was the courier for checks from Inflight insofar as Mr. Saines would "pick up the checks from Inflight and . . . bring them to City Services . . . ."

On February 11, 2009, Plaintiff's counsel examined Mr. Barry Saines who testified that he cashed checks for the Defendant from Inflight during the period 1999 to 2004. Mr. Saines testified that he and the Defendant would meet in a parking lot adjacent to a Valley Stream diner where Saines would give the Defendant the cash from the prior week. Mr. Saines bolstered Mr. Alper's testimony that Inflight's checks were cashed through City Services. Mr. Saines testified that the Defendant would give him checks, each enclosed in an envelope from Inflight, with a stub for each check. Furthermore, Mr. Saines testified that the checks were made payable to third parties, they were already endorsed when he received them, and they were from Inflight. After cashing the checks with City Services or Belair Payroll Services, another check cashing company, Saines would count the money in his home, make an envelope with the gross amount, minus six or eight percent, and deliver the cash to the Defendant at a pre-arranged meeting at a nearby diner.

Plaintiff also relies on documentary evidence consisting of checks written from INM and the Debtor. Plaintiff alleges that between August 1999 and January 2003, three hundred and seventy-two (372) checks, totaling $2,997,384.76 and drawn on an account of the Debtor, were made payable to fictitious payees and were cashed by the Defendant through check cashing companies. Plaintiff further alleges that between January 2003 and September 2004, one hundred and ninety-eight (198) checks, totaling $1,347,489.75 drawn on account of INM were

7

made payable to fictitious payees and were cashed by the Defendant through the check cashing companies.

According to the New York State Department of State records INM is an inactive New York State corporation that was registered with the Department of State on April 22, 1999 and was dissolved by New York State on June 25, 2003. The Debtor is an active corporation in New York State that was registered with the Department of State on September 3, 1968 and remains registered with the State. However, Plaintiff alleges that one hundred and seventeen (117) checks, totaling $867,669.64 were drawn on account of INM after it was dissolved.

On June 12, 2009, the Defendant filed opposition to the Trustee's motion for partial summary judgment as well as a cross-motion for partial summary judgment. The Defendant argues that the evidence submitted by the Trustee in support of his motion is insufficient as a matter of law. The Defendant also asserts that the inferences to be drawn in his favor when deciding the Trustee's motion for partial summary judgment are not altered by the Defendant's invocation of the Fifth Amendment privilege. The Defendant cross-moves for summary judgment dismissing the Trustee's first, second, fourth, fifth, sixth, ninth, tenth, eleventh, twelfth, thirteenth, twenty-first, and twenty-second claims for relief because the money the Trustee is seeking to recover is not property of the estate and some of the Trustee's claims are barred by the applicable statute of limitations.

In addition, the Defendant submitted a sworn affidavit in support of his opposition and cross-motion for partial summary judgment. In summary, the Defendant does not dispute that he failed to pay taxes on certain funds he received and he was convicted of criminal tax evasion as a result, but the Defendant argues that the criminal action against him concerned only INM and not the Debtor.

On September 3, 2009, the Trustee filed a reply to the opposition and cross-motion for partial summary judgment requesting that the court deem the Affidavit and Defendant's counsel's affirmation inadmissible.  On September 9, 2009, at a hearing before the Court, Defendant's counsel declined to consent to a deposition and the Defendant reasserted his Fifth Amendment privilege.  Thereafter, both parties filed supplemental papers and the matter was marked submitted.

***Legal Analysis***

   1.  *Motion to Strike Defendant's Affidavit*

Before ruling on the motion and cross-motion for partial summary judgment the Court must address the Trustee's motion to strike the Affidavit on the grounds that the Defendant impermissibly submitted an affidavit into evidence after invoking his Fifth Amendment privilege against self-incrimination.  A ruling on the admissibility of the Affidavit is necessary in analyzing what facts are in the record with respect to each motion for summary judgment.  Based on the facts of this case and applicable case law, the Court finds that the Affidavit is inadmissible.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."  U.S. Const. amend. V.  A party may invoke the privilege in both criminal as well as civil matters and during the discovery process as well as during trial.  United States v. Inc. Village of Island Park, 888 F.Supp. 419, 431 (E.D.N.Y. 1995); *see e.g.* Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).

Generally, courts must permit as much testimony as possible to be presented in a civil litigation, despite one party's assertion of the Fifth Amendment privilege.  United States v. 4003-4005 5th Ave., 55 F.3d 78, 83-84 (2d Cir. 1995)("4003-4005")("[B]ecause *all* parties - those who

invoke the Fifth Amendment and those who oppose them - should be afforded every reasonable

opportunity to litigate a case fully and because exercise of Fifth Amendment privilege should not

be made unnecessarily costly, . . . courts, upon an appropriate motion, should seek out those

ways that further the goal of permitting as much testimony as possible to be presented in the civil

litigation, despite the assertion of the privilege.").  However, the potential for abuse of the

privilege exists when the party asserting the privilege in discovery later submits an affidavit in

opposition to a motion for summary judgment.  This may result in adverse consequences for the

party asserting the privilege.   United States v. Inc. Village of Island Park, 888 F.Supp. at 431

("Because of the potential for abuse of the privilege by defendants who use it to obstruct

discovery only to waive it and subject the plaintiff to surprise testimony at trial, the courts

recognize the appropriateness of imposing sanctions for a civil defendant's assertion of the

privilege during discovery.  Thus, a decision to assert the privilege during pre-trial depositions

may be valid grounds for . . . striking affidavits opposing summary judgment motions.")(*citing* In

re Edmond, 934 F.2d 1304, 1308-09 (4th Cir. 1991); United States v. Parcels of Land, 903 F.2d

36, 43 (1st Cir. 1990)).

       Therefore, it is well accepted that the Court may strike an affidavit when a party that has

invoked his or her Fifth Amendment privilege during discovery subsequently submits an

affidavit in response to summary judgment.  *See* In re Equity Land Title Agency, 326 B.R. 427,

430 (Bankr. S.D.Ohio 2005)(holding that the defendant's affidavit must be stricken where

husband and wife defendants both asserted a blanket Fifth Amendment privilege and the wife

filed an affidavit challenging the Trustee's "flawed statements and conclusions" subsequent to

the Trustee's motion for summary judgment);  Bourgal v. Robco Contracting Enters., 969

F.Supp. 854, 862 (E.D.N.Y. 1997)("Bourgal")(The court barred defendants, who had obstructed

discovery and invoked the Fifth Amendment, from creating issues of fact by submitting affidavits in opposition to the plaintiff's motion for summary judgment.); United States v. Inc. Village of Island Park, 888 F.Supp. at 431 (The court refused to consider affidavits offered in opposition to a motion for summary judgment by affiants who had previously invoked the Fifth Amendment privilege.); United States v. 2730 Highway 31, 909 F.Supp. 1450, 1456-57 (N.D.Ala. 1995)("2730 Highway 31")(The court struck an affidavit offered in opposition to a motion for summary judgment by a claimant who "refused to answer *any* question as to whether he committed any unlawful acts with regard to controlled substances from which [the] forfeiture action [was] *entirely* based.").

Alternatively, courts have held that a submission of an affidavit amounts to a waiver of the Fifth Amendment; therefore, the affiant is subject to immediate deposition. In re Edmond, at 1308-09. Furthermore, if the party still declines to answer at the ordered deposition, the affidavit may be stricken. *See e.g.* In re Edmond, 934 F.2d at 1308-09 (Although the court initially struck the defendant's affidavit, the court conditionally allowed the affidavit upon completion of a deposition of the defendant; when defendant still failed to comply with the order compelling deposition, the affidavit was stricken.).

The court in Bourgal considered several factors in arriving at the appropriate balance between protection of the Fifth Amendment privilege and the opponent's interest in fair litigation. Those factors include the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to the opposing parties. Bourgal, 969 F.Supp. at 861. The Bourgal court followed the Second Circuit's direction in 4003-4005, 55 F.3d at 84, that the trial court should take a "liberal view" toward Fifth Amendment waiver questions such that a case may be adjudicated on its merits. Bourgal, 969 F.Supp. at 861. Nonetheless, the Court of

Appeals noted, the trial court must not "carelessly" permit withdrawal of the privilege.  <u>Bourgal</u>, 969 F.Supp. at 861.  "Eleventh hour" requests for waiver, suggestive of a "cat-and-mouse approach" to litigation may result in the litigant being barred from waiving the privilege.  <u>4003-4005</u>, 55 F.3d at 85.

In this case there are ample grounds to strike the Affidavit.  First, as in <u>In re Edmond</u>, the Court asked Defendant's counsel at a hearing held on September 9, 2009 if the Defendant would consent to a deposition.  *See e.g.* <u>In re Edmond</u>, 934 F.2d at 1309.  The Defendant's refusal to consent to a deposition, alone, would justify a decision to strike the Affidavit.  *See* <u>Id</u>.  Moreover, as in <u>2730 Highway 31</u>, other than as contained in certain papers filed by Defendant's counsel, Defendant has refused to answer *any* question as to the origin of the money he received and *all* of the claims in the complaint require a finding that he received money from the Debtor. Furthermore, Defendant submitted an affidavit on this point, alleging that the Debtor is not the same entity as INM, the entity from which he admittedly received money.  This is clearly prejudicial to the Trustee.  *See* <u>2730 Highway 31</u>, 909 F.Supp. at 1457.  Therefore, because the Defendant submitted an affidavit at the eleventh hour and the factors weigh in favor of the Trustee to ensure fairness in litigation, the Affidavit will be stricken.

2.   *The Standard for Summary Judgment*

Pursuant to Rule 56(c), incorporated by Bankruptcy Rule 7056(c), summary judgment is warranted only upon a showing by the movant that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (*quoting* Fed. R. Civ. P. 56(c)).  A fact is material when a dispute over that fact would "affect the outcome of the suit under the

governing law," and the resolution of a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In reviewing the record, the Court must resolve all ambiguities in favor of the nonmoving party.  Amnesty America v. Town of West Hartford, 361 F.3d 113, 122 (2d Cir. 2004).  The court is not to weigh the evidence, instead the Court must determine whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. at  249.  When presented with a motion and cross-motion for summary judgment, the Court "is not required to grant judgment as a matter of law for one side or the other," and "the court must evaluate each party's motion on its own merits."  Ricci v. DeStefano, 530 F.3d 88, 109-10 (2d Cir. 2008).

In order to defeat a summary judgment motion, the nonmoving party must present specific material facts and present sufficient evidence in support of them to show "the existence of not just 'metaphysical doubt,' . . . but rather, a genuine dispute requiring resolution at trial." Mitchell v. Senkowski, 158 F. App'x. 346, 348 (2d Cir. 2005).  In re Adler, Coleman Clearing Corp., 469 F.Supp.2d 112, 117 (S.D.N.Y. 2007) (The court will grant summary judgment if it can be shown that "little or no evidence may be found in support of the nonmoving party's case.")(citing Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223-24 (2d Cir.1994)). Summary judgment is inappropriate when the nonmoving party is incapable of presenting sufficient evidence to establish that material facts are genuinely in dispute because she's had an inadequate opportunity for discovery.  Mitchell v. Senkowski, 158 F. App'x. at 348.  In that instance, the Court may deny the motion or grant a continuance for further discovery.  Fed. R. Civ. P. 56(f).

Where a party has asserted the Fifth Amendment privilege additional considerations should be taken into account when deciding whether to grant summary judgment.  The concern

historically has been whether drawing an adverse inference against the party asserting the Fifth Amendment privilege imposes an "unconstitutional cost on the exercise of the privilege." LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 390 (7th Cir. 1995).  Nonetheless, it is settled law that, in a civil case, an adverse inference may be drawn.  Baxter v. Palmigiano, 425 U.S. 308, 320 (1976); 4003-4005, 55 F.3d at 83; Brink's Inc. v. City of New York, 717 F.2d 700, 707-10 (2d Cir. 1983); In re WorldCom, Inc., 377 B.R. 77, 108-09 (Bankr. S.D.N.Y. 2007); Fidelity Funding of California, Inc. v. Reinhold, 79 F. Supp.2d 110, 116-17 (E.D.N.Y. 1997).   However, prior to drawing an adverse inference against the party asserting the privilege, courts must examine whether undue prejudice exists.  See Fed. R. Evid. 403; see also In re Adelphia, 317 B.R. 612, 626-28 (Bankr. S.D.N.Y. 2004)(examining prejudice to both parties); Brink's Inc. v. City of New York, 717 F.2d at 710 (The court found that the claim of privilege, by witnesses who were both parties to the action vis-à-vis defendant's third party claim against them and third-party witnesses vis-à-vis plaintiff's claim against defendant, is evidence; therefore, the court must examine whether "the probative value of the evidence was not 'substantially outweighed by the danger of unfair prejudice' under Fed. R. Evid. 403.  This balancing test [is] left largely to the discretion of the trial judge.").

    If the Court determines that an adverse inference may be drawn, the moving party must present additional evidence; it cannot rely solely on the adverse inference.  LaSalle Bank Lake View v. Seguban, 54 F.3d at 391 (citing Baxter v. Palmigiano, 425 U.S. at 318); Fidelity Funding of Calif., Inc. v. Reinhold, 79 F. Supp. 2d at 116.  An adverse inference against the party invoking the Fifth Amendment, alone, is not enough to establish the absence of a genuine issue of material fact.  Centennial Life Ins. Co. v. Nappi, 956 F. Supp. 222, 228 (N.D.N.Y. 1997).

In this Circuit, some courts have found that an adverse inference should not be drawn against the party asserting the Fifth Amendment privilege in a motion for summary judgment. These courts reason that the summary judgment standard, requiring a court to draw all reasonable inferences in favor of the nonmoving party, precludes the drawing of an adverse inference, "despite potential for the ultimate trier of fact to draw an adverse inference . . . ." *See* In re WorldCom, Inc., 377 B.R. at 109; Stichting Ter Behartiging Van de Bel. v. Schreiber, 407 F.3d 34, 55 (2d Cir. 2005)("We are required at summary judgment to draw all reasonable inferences in favor of the non-moving party . . . [thus,] we cannot conclude that [the non-party's] silence resolves all genuine issues of fact . . . ."); Fidelity Funding of California, Inc. v. Reinhold, 79 F. Supp.2d at 116-17 ("[T]he court in deciding this summary judgment motion is in a far different posture than a post-trial trier of fact. Accordingly, the court will not rely on any adverse inferences in its evaluation of the evidence for the purposes of this summary judgment motion."); Parsons & Whittemore Enters. v. Schwartz, 387 F. Supp.2d 368, (S.D.N.Y. 2005)("But even assuming that a jury might draw [adverse] inferences, the court is still required at summary judgment to draw all reasonable inferences in favor of the non-moving party.").

Other courts in the Second Circuit disagree and find that an adverse inference may be drawn, resulting in an adverse finding, even in the context of a summary judgment motion. 4003-4005, 55 F.3d at 83 ("[T]he claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.")(*citing* 8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure § 2018, at 288 (2d ed. 1994)("In some cases if a party claims the privilege and does not give his or her own evidence there will be nothing to support his or her view of the case and an adverse finding or even a directed verdict or grant of summary

judgment will be proper."); In re Adelphia, 317 B.R. at 624 (*citing* 4003-4005, 55 F.3d at 83);

SEC v. Cavanagh, No. 98 Civ. 1818DLC, 2004 WL 1594818, at *13 (S.D.N.Y. July 16,

2004)(*quoting* and applying 4003-4005).   Courts in this circuit have also granted summary

judgment in cases where the non-moving party had previously asserted the Fifth Amendment

privilege.  *See* SEC v. Global Telecom Servs., L.L.C., 325 F.Supp.2d 94, 108-111 and 118

(D.Conn. 2004)(The court drew an adverse inference against defendant La Touche because

plaintiff's motion was supported by "substantial evidence, meticulously documented and cited,"

and defendant employed "conclusory assertions of innocence," failed to provide a Rule 56(a)(2)

statement, and used 11th hour tactics that prejudiced movant.  However, in granting summary

judgment the court still viewed the evidence in the light most favorable to defendant.); SEC v.

Cavanagh, 2004 WL 1594818, at *32; SEC v. Softpoint, Inc., 958 F.Supp. 846, 859 (S.D.N.Y.

1997)(Sotomayor, J.)(Although the court made no mention of drawing an adverse inference, the

court granted summary judgment in favor of the plaintiff where the court had denied Defendant

the ability to waive the Fifth Amendment privilege, the court had precluded affidavits submitted

by defendant in opposition to summary judgment, defendant had disregarded local rule 3(g)

requiring the defendant to submit a statement of disputed material facts, and plaintiff's motion

had been supported by a "voluminous record."); Centennial Life Ins. Co. v. Nappi, 956 F.Supp.

at 229 (The court granted summary judgment where plaintiff "set forth a myriad of evidence"

and court drew an adverse inference against non-movant who asserted the Fifth Amendment

privilege); Bourgal v. Robco Contracting Enters., 969 F.Supp. at 862 (The court granted

summary judgment motion and precluded defendants from creating issues of fact by submitting

affidavits in support of their opposition to summary judgment, but court did not rely on an

adverse inference against defendants.).

Whether the Court permits the drawing of an adverse inference or not, in a summary judgment motion, the burdens on the parties remain the same.  To succeed in his summary judgment motion, the Trustee must build a record that shows that there is no genuine issue of material fact.  The Court is required, as a matter of law, to draw all inferences in favor of the nonmoving party, the Defendant.  Furthermore, because the Defendant asserted his Fifth Amendment privilege, the Court may, as a matter of law, draw an adverse inference against the Defendant.  However, drawing this adverse inference does not alter the requirement that, on summary judgment, the Court draw all inferences in favor of the nonmoving party.  If the Court were to draw an adverse inference from the Defendant's assertion of the Fifth Amendment privilege, the adverse inference, standing alone, would not satisfy the Trustee's burden on summary judgment.  The Trustee must present evidence, aside from the adverse inference, to overcome the inference in favor of the nonmoving party.  Thus, although the adverse inference that may be drawn against the Defendant has probative value, that value does not equal the inference that must be drawn in favor of the nonmoving party on summary judgment.

Applying this standard to the facts presented, if the Court were to draw an adverse inference against the Defendant based on his assertion of his Fifth Amendment privilege, the Trustee could not rely on this adverse inference alone to establish that the Defendant received money from the Debtor and not from some third party.  However this is what the Trustee has asked this Court to do.  The evidence the Trustee has submitted has no probative value on this issue.  As a result, the Trustee has not met his burden on summary judgment.

The Court cannot determine from the evidence presented whether the money received by the Defendant came from the Debtor or INM.  Although the Trustee is correct that the deposition testimony of Bracken, Alper and Saines establishes that the Defendant was involved in a scheme

to obtain funds from a third party, the identity of that third party is unclear. During each of the depositions, the Trustee's counsel alternately referred to "Inflight Newspapers," "Inflight," or the "Debtor" when examining the witnesses. Thus, it is not clear from any of the deposition transcripts whether the Trustee's counsel was referring to one entity in particular, both entities interchangeably, or to one entity to the exclusion of the other. Moreover, although many of the checks introduced to support Plaintiff's motion are drawn on the Debtor's account, a question of fact remains as to whether the Defendant was the recipient of the funds.

The Trustee argues that the Debtor and INM are the same legal entity and therefore any references to INM or Inflight as opposed to the Debtor are irrelevant. The Trustee states, "based upon my conversations with Remy Lehner, the Debtor's President, as well as the Plaintiff's investigation into the Debtor's financial affairs, the Debtor and [INM] were one and the same. They operated out of the same premises located at 25 Cottage Street, Valley Stream, New York and [INM] was wholly funded by the Debtor." The Trustee also argues that the Debtor and INM must be the same company because one hundred and seventeen (117) checks, totaling $867,669.64 were drawn on account of "Inflight Newspapers & Magazines, Inc." after June 25, 2003, the date of that entity's dissolution. However, the Trustee did not allege in the complaint that the Debtor and INM are the same legal entity, nor has the Trustee established that these two entities are the same as a matter of law.

In sum, even if the Court draws an adverse inference against the Defendant, the Trustee's independent evidence regarding the source of funds obtained by the Defendant is so lacking in probative value that the Trustee cannot overcome the inference the Court must draw in favor of the Defendant as the non-moving party. Therefore, the Court must deny Plaintiff's motion for partial summary judgment. Thus, a hearing to determine (i) whether the funds received by the

Defendant were property of the estate or (ii) whether INM and the Debtor are, as a matter of law, a single entity.

3. *Cross-motion for Partial Summary Judgment*

Applying the same legal reasoning the Court afforded Plaintiff's motion for partial summary judgment to Defendant's cross-motion for partial summary judgment, the Defendant's motion is denied. As with the Trustee's motion for partial summary judgment a genuine issue of material fact exists relating to whether the funds allegedly diverted by the Defendant were property of the estate. Thus, the Court's analysis of the Defendant's summary judgment motion is limited only to whether the applicable statute of limitations has run on the claims in the complaint.

As a general rule, summary judgment on the basis of the expiration of a statute of limitations is appropriate when the plaintiff fails to show the existence of any genuine issue of fact relating to the dates that are relevant in evaluating whether the limitation period has run. Overall v. Klotz, 846 F. Supp. 297, 299 (S.D.N.Y 1994).

*Conversion (Claim 1)*

The applicable statute of limitations on the claim for conversion is three years as set forth in N.Y. Civil Procedure Law § 214(3) (2009). Vigilant Ins. Co. of America v. Hous. Auth., 87 N.Y.2d 36, 44 (N.Y. 1995); Daisley v. FedEx Ground Package Sys., No. 08-CV-4063, 2008 U.S. Dist. LEXIS 97373 *7 (E.D.N.Y. Dec. 1, 2008)("The statute of limitations for conversion claims, which sound in tort, not contract, is three years in New York."). The limitations period begins to run when the conversion takes place. *Id.* at *8. Furthermore, when the conversion involves multiple diversions of funds over several years, the statutory period begins to run when each diversion of funds took place. Disabled American Veterans v. Phillips, No. 15759/05, 2006

WL 2707355 *1 (N.Y. Sup. Ct. Sept. 19, 2006). Finally, the operative date for determining the look-back period for recovering a transfer is the petition date, which in this case is August 10, 2007. In re Die Fliedermaus, L.L.C., 323 B.R. 101 (Bankr. S.D.N.Y. 2005). The Debtor's involuntary filing tolled the statute of limitations, allowing the Trustee to bring the action within two years of the Debtor's filing. *See* 11 U.S.C. §108(a); In re Ahead by a Length, Inc., 100 B.R. 157, 163 (Bankr. S.D.N.Y. 1989). Thus, Defendant's cross-motion for partial summary judgment is denied because there is a genuine issue of material fact regarding whether an act of conversion occurred after August 10, 2004.[4]

*Monies Had and Received (Claim 2)*

The applicable statute of limitations for monies had and received is six years. N.Y. Civil Procedure Law § 213 (2009). N. Salem. Ctr. Sch. Dist. v. Mahopac Ctr. Sch. Dist., 768 N.Y.S.2d 11, 12 (N.Y. App. Div. 2003). By analogy to the conversion claim, the statutory period begins to run when each diversion of funds took place. In addition, the Debtor's involuntary filing tolled the statute of limitations, allowing the Trustee to bring the action within two years of the Debtor's filing. *See* 11 U.S.C. §108(a); In re Ahead by a Length, Inc., 100 B.R. 157, 163 (Bankr. S.D.N.Y. 1989). Thus, Defendant's cross-motion for partial summary judgment is denied because there is a genuine issue of material fact regarding whether an act constituting monies had and received occurred after August 10, 2001.

*Breach of Fiduciary Duty (Claims 4 through 6)*

Claims for breach of fiduciary duty generally are governed by a three- or six-year statute of limitations period depending on whether money damages or equitable relief is sought. Balta v. Ayco Co., 626 F.Supp.2d 347, 356 (W.D.N.Y 2009); Loengard v. Santa Fe Indus., 70 N.Y.2d

---

[4] Some claims for liability may be barred by the statute of limitations and the amount of recoverable damages remains an open issue.

262, 266 (N.Y. 1987).  When the remedy sought is purely monetary in nature, courts apply a three-year statute of limitations period under N.Y. Civil Procedure Law § 214(4) (2009) because it is construed as a suit alleging "injury to property."  *See e.g.* <u>Yatter v. William Morris Agency</u>, 682 N.Y.S.2d 198 (N.Y. App. Div. 1998).  However, an exception to this general rule applies to breach of fiduciary duty claims where fraud is alleged under N.Y. Civil Procedure Law § 213(1) (2009), "even when the relief sought is money damages."   <u>Balta v. Ayco Co.</u>, 626 F.Supp.2d at 356; <u>Leongard v. Santa Fe Indus.</u>, 70 N.Y.2d at 266-67.  Thus, where fraud is not merely incidental to plaintiff's cause of action, the statute of limitations for breach of fiduciary duty is six years under N.Y. Civil Procedure Law § 213(8) (2009) even if the relief sought is money damages.  <u>Balta v. Ayco Co.</u>, 626 F.Supp.2d at 356; s*ee e.g.* <u>Kaufman v. Cohen</u>, 760 N.Y.S.2d 157, 164 (N.Y. App. Div. 2003).  Courts must look for "the reality, and the essence of the action and not its mere name <u>Balta v. Ayco Co.</u>, 626 F.Supp.2d at 356 (*citing* <u>Kaufman v. Cohen</u>, 760 N.Y.S.2d at 165).  Thus, the viability of Plaintiff's fraud cause of action determines whether Plaintiff's breach of fiduciary duty action has a three- or six-year statute of limitations period. Because Plaintiff's action is clearly based in fraud, the Court finds that the applicable statutory limitations period is six years.  In addition, the Debtor's involuntary filing tolled the statute of limitations, allowing the Trustee to bring the action within two years of the Debtor's filing.  *See* 11 U.S.C. §108(a); <u>In re Ahead by a Length, Inc.</u>, 100 B.R. 157, 163 (Bankr. S.D.N.Y. 1989). Thus, Defendant's cross-motion for partial summary judgment is denied because there is a genuine issue of material fact regarding whether an act constituting breach of fiduciary duties occurred after August 10, 2001.

*Self-Dealing (Claim 22)*

Defendant argues, and the Trustee does not dispute, that alleged self-dealing is a sub-type of claim for breach of fiduciary duty.  Case law in New York suggests that self-dealing is a component of a breach of fiduciary duty cause of action.  *See* <u>Nathanson v. Nathanson</u>, 799 N.Y.S.2d 83, 85 (N.Y. App. Div. 2005)("[A]llegations that [Defendant] engaged in self-dealing by deferring payment of certain priority distributions . . . were sufficient to state a cause of action for breach of fiduciary duty."); <u>Parker v. Marglin</u>, 869 N.Y.S.2d 21, 22 (N.Y. App. Div. 2008)("Plaintiffs . . . fail to adduce evidence of self-dealing, fraud, or other acts constituting a breach of fiduciary duty sufficient to overcome the business judgment rule . . . ."); *see also* <u>Shapiro v. Rockville Country Club, Inc.</u>, 802 N.Y.S.2d 717, 719 (N.Y. App. Div. 2005); <u>Higgins v. NYSE</u>, 806 N.Y.S.2d 339, 357 (N.Y. Sup. Ct. 2005).

Case law in New York suggests that self-dealing is a component of a breach of fiduciary duty claim and therefore the Court applies the same analysis as above to determine the applicable limitations period for a claim of self-dealing.  Since Plaintiff's action is clearly based in fraud, the Court finds that the applicable statutory limitations period is six years.  In addition, the Debtor's involuntary filing tolled the statute of limitations, allowing the Trustee to bring the action within two years of the Debtor's filing.  *See* 11 U.S.C. §108(a); <u>In re Ahead by a Length, Inc.</u>, 100 B.R. 157, 163 (Bankr. S.D.N.Y. 1989).  Thus, Defendant's cross-motion for partial summary judgment is denied because there is a genuine issue of material fact regarding whether an act constituting self-dealing occurred after August 10, 2001.

*Fraudulent Conveyance (Claims 9 through 13)*

A six-year statute of limitation applies to fraudulent conveyance claims.  N.Y. Civil Procedure Law § 213(1) (2009); <u>Citicorp Trust Bank v. Makkas</u>, 67 A.D. 3d 950, 950 (N.Y. App. Div. 2009)("Constructive fraud claims predicated upon Debtor and Creditor Law §§ 273

and 273-a, are governed by the six-year statute of limitations set forth in CPLR 213(1), and arise at the time that the alleged fraudulent conveyance is made.")  In addition, the Debtor's involuntary filing tolled the statute of limitations, allowing the Trustee to bring the action within two years of the Debtor's filing.  *See* 11 U.S.C. §108(a); <u>In re Ahead by a Length, Inc.</u>, 100 B.R. 157, 163 (Bankr. S.D.N.Y. 1989).  Thus, Defendant's cross-motion for partial summary judgment is denied because there is a genuine issue of material fact regarding whether an act constituting fraudulent conveyance occurred after August 10, 2001.

*Unjust Enrichment (Claim 21)*

The Trustee's claims of unjust enrichment are subject to a six-year statute of limitations. N.Y. Civil Procedure Law § 213(1) (2009); <u>Golden Pacific Bankcorp v. FDIC</u>, 273 F.3d 509, 518 (2d Cir. 2001); <u>Kermanshah v. Kermanshah</u>, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008). In addition, the Debtor's involuntary filing tolled the statute of limitations, allowing the Trustee to bring the action within two years of the Debtor's filing.  *See* 11 U.S.C. §108(a); <u>In re Ahead by a Length, Inc.</u>, 100 B.R. 157, 163 (Bankr. S.D.N.Y. 1989).  Thus, Defendant's cross-motion for partial summary judgment is denied because there is a genuine issue of material fact regarding whether an act constituting unjust enrichment occurred after August 10, 2001.

**Conclusion**

For the foregoing reasons, the Trustee's Motion for partial summary judgment is denied and the Defendant's motion for partial summary judgment is denied.  The Court shall hold a trial on the remaining issues on March 2, 2010 at 10:00 a.m.  The Court shall enter an order consistent with this Memorandum Decision forthwith.

Dated:  Central Islip, NY            By:    ***/s/ Robert E. Grossman***
       January 6, 2010                          Hon. Robert E. Grossman
                                                             United States Bankruptcy